IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| PALOMA MARTINEZ-CRUZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-cv-4328 |
| | ) | |
| NORTH CENTRAL COLLEGE, ET AL., | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' motion to dismiss Counts VI and VII of Plaintiff's complaint [10]. For the reasons set forth below, the Court grants Defendants' motion [10] and dismisses Counts VI and VII. Counts I through V remain pending.

**I.    Background[1]**

On August 5, 2005, Defendant North Central College ("North Central") hired Plaintiff Paloma Martinez-Cruz as an assistant professor of Spanish in the department of Modern and Classical Languages. The position was a full-time tenure-track position. Plaintiff taught more than 15 courses as an assistant professor at North Central, published books and articles, reformed the requirements and curriculum of North Central's Spanish major, and had substantial involvement with North Central's Gender and Women's Studies Program. She also received favorable evaluations.

On May 21, 2011, Plaintiff was denied tenure and promotion by North Central. The Faculty Personnel Committee voted 4-2 not to recommend tenure. The committee stated that its

---

[1] In reviewing the instant motion, the Court accepts as true the facts alleged in Plaintiff's complaint and makes all reasonable inferences in her favor. See, *e.g.*, *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012).

1

decision was based on a perceived weakness in teaching that was based on deficient student evaluations. Dean of Faculty R. Devadoss Pandian and North Central President Harold R. Wilde agreed with the Faculty Personnel Committee and recommended against tenure and promotion.

On July 5, 2011, Dr. Martinez-Cruz submitted a grievance regarding the denial of her application for tenure and promotion. Plaintiff's grievance included allegations of discrimination based on race, national origin, and sex as well as allegations that the Faculty Personnel Committee departed from established procedures in considering her application for tenure. A panel reviewed Plaintiff's grievance and ordered the Faculty Personnel Committee to reconsider her tenure application. The panel's written order directed the Faculty Personnel Committee to "be particularly careful to ensure that (i) student evaluations are not given priority over the evaluations of the department and division chairs; (ii) Dr. Martinez-Cruz's discussion of student concerns is given adequate consideration in terms of the personnel standards of the College; and (iii) any deficiencies with regard to the concerns expressed by students are weighted against the overall strength of her teaching, as well as her strengths in advising, campus citizenship and professional growth and scholarship." The panel directed the Faculty Personnel Committee to "issue a full and detailed report to the Grievant to explain the affirmation of their original decision or its reversal."

On September 15, 2011, the Faculty Personnel Committee issued a one-page memorandum to Plaintiff announcing that it had unanimously affirmed the denial of tenure. The Committee also issued a memorandum to Dean Pandian objecting to the findings of the Grievance Panel and requesting that the memo be included in the college's grievance file.

On June 11, 2013, Plaintiff filed a seven-count complaint against Defendants North

2

Central College ("North Central"), Harold Wilde, R. Devadoss Pandian, Heather Coon, Martha Bohrer, Nancy Keiser, Nancy Peterson, Beverly Richard Cook, and Andrew Whitaker. Plaintiff brings various claims related to her employment at North Central, including violations of Title VII and 42 U.S.C. § 1981 for unlawful race and/or national origin discrimination, gender/sex discrimination, and retaliation. The complaint also includes claims for breach of contract (Count VI) and fraudulent misrepresentation (Count VII). Defendants move to dismiss Counts VI and VII.

## II. Legal Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in its favor. *Killingsworth*, 507 F.3d at 618. To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what

the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

Where a complaint sounds in fraud, the allegations of fraud must satisfy the heightened pleading requirements of Rule 9(b). Fed. R. Civ. P. 9(b); see also *Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 507 (7th Cir. 2007) (citing *Rombach v. Chang,* 355 F.3d 164, 170–71 (2d Cir. 2004)). Rule 9(b) states that for "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). A complaint satisfies Rule 9(b) when it alleges "the who, what, when, where, and how: the first paragraph of a newspaper story." *Borsellino,* 477 F.3d at 507 (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990)). Rule 9(b), read in conjunction with Rule 8, requires that the plaintiff plead "the time, place and contents" of the purported fraud. *Fujisawa Pharm. Co., Ltd. v. Kapoor,* 814 F. Supp. 720 (N.D. Ill. 1993). "The purpose of this heightened pleading requirement is to 'force the plaintiff to do more than the usual investigation before filing his complaint.'" *Amakua Dev. LLC v. H. Ty Warner,* 411 F. Supp. 2d 941, 953 (N.D. Ill. 2006) (citations and internal quotation marks omitted).

**III. Analysis**

In Count VI, Plaintiff alleges that North Central's faculty handbook constituted a binding and enforceable employment contract and that North Central failed to adhere to the handbook in denying her tenure and promotion. In Count VII, Plaintiff contends that during the hiring process Defendants promised her an academic environment free from discrimination and

4

retaliation and that she was subsequently injured by her reliance upon Defendants' statements. Defendants move to dismiss both counts.

### A. Breach of Contract (Count VI)

Defendants contend that Plaintiff's breach of contract claims fails because Plaintiff has not alleged—and cannot allege—the existence of a legally enforceable contract to support her claim. Illinois law provides that employee handbooks may constitute enforceable contracts under certain conditions (see, e.g., *Duldulao v. Saint Mary of Nazareth Hosp. Center,* 505 N.E.2d 314, 318 (Ill. 1987)), but not where the handbook expressly and conspicuously disclaims the creation of contractual obligations. See *Garcia v. Kankakee County Housing Authority,* 279 F.3d 532, 536 (7th Cir. 2002); *Davis v. Time Mirror Magazines, Inc.,* 697 N.E.2d 380, 387–88 (Ill. App. Ct. 1998); *Spaulding v. Abbott Laboratories*, 2010 WL 4822894, at *9 (N.D. Ill. Nov. 22, 2010). The North Central Faculty Handbook specifically disclaims the creation of any contractual obligations on the first page of the handbook.[2] See North Central College Faculty Handbook ("This handbook is not to be considered a part of any employment agreement with any faculty member * * * * It is not intended to function as a legal document.").

To the extent that Plaintiff argues that the *Duldulao* exception applies because the

---

[2] Although the handbook is not attached to the complaint, it is referenced in the complaint and central to the allegations contained in Plaintiff's complaint. In fact, the existence of a valid and enforceable contract is the first element of Plaintiff's breach of contract claim. See *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 631 (7th Cir. 2007). It is well-established that a court may consider documents that are concededly authentic, referenced in a plaintiff's complaint, and central to a plaintiff's claims, even if those documents are not attached to the complaint. See *Hecker v. Deere & Co.,* 556 F.3d 575, 582 (7th Cir. 2009) ("This court has been relatively liberal in its approach to the rule articulated in *Tierney* and other cases."); see also *Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1248 (7th Cir. 1994) (upholding consideration of an agreement quoted in the complaint and central to the question whether a property interest existed for purposes of 42 U.S.C. § 1983); *Venture Associates v. Zenith Data Sys.,* 987 F.2d 429, 431 (7th Cir. 1993)(admitting letters, to which the complaint referred, that established the parties' contractual relationship); *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.,* 805 F.2d 732, 739 (7th Cir. 1986) (permitting reference to a welfare plan referred to in the complaint in order to decide whether the plan qualifies under ERISA). In this instance, the allegations in Plaintiff's complaint put the handbook squarely before the Court.

disclaimer in the handbook is inconspicuous, her argument lacks merit. The disclaimer at issue here is displayed clearly on the first page of the North Central Faculty Handbook and states that (1) the handbook is meant to be a guide only; (2) is not to be considered part of any employment agreement with any faculty member; and (3) is not intended to function as a legal document. Under Illinois law, these upfront disclaimers preclude Plaintiff's contention that the handbook constitutes a contract. See *Garcia,* 279 F.3d at 535–36 (rejecting contract claim where disclaimer on second page of handbook stated: "This Manual creates no rights, contractual or otherwise, between the Authority, any prospective or current employee, or any other person * * * * The Authority reserves the right to amend, modify and/or revoke any of its policies, practices, procedures and standards summarized in this handbook.") (collecting cases); see also *Harris v. Seyfarth Shaw LLP*, 2010 WL 3701322, at *2 (N.D. Ill. Sept. 9, 2010); *Elder v. Comcast Corp.*, 2012 WL 3835100, at *2 (N.D. Ill. Sept. 4, 2012) (noting that "a disclaimer is effective to preclude the formation of a contract under Illinois law"). Accordingly, the Court dismisses Count VI.

### B. Fraudulent Misrepresentation (Count VII)

Plaintiff alleges that during the hiring process Defendants promised her that the Faculty Handbook would govern the terms and conditions of her employment and that she would work in an academic environment free from discrimination and retaliation. She maintains that she was subsequently injured by her reliance upon Defendants' statements.

To state a claim for fraudulent misrepresentation, a plaintiff must allege "(1) [a] false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance. *Dloogatch v. Brincat,*

6

920 N.E.2d 1161, 1166 (2009); see also *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012). As set forth above, under the heightened federal pleading standard of Rule 9(b), a plaintiff "alleging fraud * * * must state with particularity the circumstances constituting fraud." See Borsellino, 477 F.3d at 507. Although the Court has concerns about whether Plaintiff's fraudulent misrepresentation claim meets various prongs of the heightened standard—such as sufficiently alleging the who, what, when, where, and how of the fraud—the Court need not delve into these concerns, as Plaintiff's claim is vulnerable on an additional ground.

Count VII presents a claim of promissory fraud—that is, a "false statement of intent regarding future conduct," as opposed to a false statement of existing or past fact. *Association Benefit Services, Inc. v. Caremark RX, Inc.,* 493 F.3d 841, 853 (7th Cir. 2007). Promissory fraud is "generally not actionable" in Illinois "unless the plaintiff also proves that the act was a part of a scheme to defraud." *Id.* (citing *Bradley Real Estate Trust v. Dolan Associates, Ltd.,* 640 N.E.2d 9, 12–13 (1994)). To invoke the scheme exception, the plaintiff must allege (and ultimately prove) that, at the time the promise was made, the defendant did not intend to fulfill it. *Bower v. Jones,* 978 F.2d 1004, 1011 (7th Cir. 1992) ("In order to survive the pleading stage, a claimant must be able to point to specific, objective manifestations of fraudulent intent—a scheme or device. If he cannot, it is in effect presumed that he cannot prove facts at trial entitling him to relief.") (quoting *Hollymatic Corp. v. Holly Systems, Inc.,* 620 F. Supp. 1366, 1369 (N.D. Ill. 1985)). Such evidence would include "a pattern of fraudulent statements, or one particularly egregious fraudulent statement." *BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC,* 664 F.3d 131, 136 (7th Cir. 2011) (internal citations omitted). Plaintiff's current allegations—that Defendants failed to adhere to the Faculty Handbook and promised her "an academic environment free from discrimination and retaliation"—fail to sufficiently allege a pattern of

7

fraudulent statements or even one egregious statement. Moreover, as set forth above, the Faculty Handbook specifically stated that it was meant to be a guide only and should not be considered part of any employment agreement with any faculty member. Plaintiff's reliance on promises in the Faculty Handbook falls far short of stating a claim for fraudulent misrepresentation under Illinois law.[3]

## IV. Conclusion

For the reasons set forth above, the Court grants Defendants' motion to dismiss Counts VI and VII of Plaintiff's complaint [10]. Counts I through V remain pending.

Dated: December 11, 2013          _____

                                                                       Robert M. Dow, Jr.
                                                                       United States District Judge

---

[3] To the extent that Plaintiff's fraud claim is based on the allegation that Dean Pandian "improperly injected himself into the post-grievance process," this allegations fails to state with particularity the circumstances constituting the alleged fraud. For instance, it is not clear how a dean's action of "improperly injecting" himself into a tenure decision constitutes fraudulent conduct.